IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RANDY BUXTON, #339-322 | * |
| Plaintiff | * |
| | * |
| v. | *   Civil Action Case No. PJM-10-2211 |
| | * |
| SHARON BAUCOM, MD, et al. | * |
| Defendants | * |

## MEMORANDUM OPINION

Randy Buxton, a Maryland Division of Correction ("DOC") prisoner housed at Western Correctional Institution in Cumberland, has filed a civil rights complaint under 42 U.S.C. § 1983 against Dr. Isaias Tessema, an employee of Correctional Medical Services ("CMS") as well as Dr. Sharon Baucom, Director of Clinical Services for the Maryland Department of Public Safety and Correctional Services ("DPSCS"). Buxton, who is self-represented, seeks money damages and alleges he has been denied a liver biopsy and treatment for Hepatitis C ("HCV") as well as treatment for back pain. DCF No. 1. Pending are Motions to Dismiss or in the Alternative for Summary Judgment filed by counsel for Defendants (ECF Nos. 13 and 26)[1] and Plaintiff's oppositions thereto. ECF Nos. 29 and 34. For the following reasons, the dispositive motions will be granted and relief denied.

I.   LEGAL ANALYSIS

A. Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

[1] The Court declines to address Defendant Tessema's argument that any injury arising prior to August 11, 2007 is time-barred. ECF No. 13 at 6. As the underlying constitutional claims are not established, the Court also declines to exercise supplemental jurisdiction to address any state tort claims of negligence that may be raised in the Complaint.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

B. Eighth Amendment Standard

As an inmate claiming denial of medical care in violation of the Eighth Amendment, Plaintiff must prove two elements: one objective and one subjective. First, he must satisfy the objective element by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, Plaintiff must then prove the subjective element by showing "deliberate indifference"

on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Health care staff are not liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

II.     FACTUAL ANALYSIS

Plaintiff complains that he was denied treatment despite a diagnosis of infection with HCV.[2] There is no doubt that HCV is a serious medical condition that can lead to life-threatening consequences in a portion of those infected. From previous litigation in this district, the undersigned knows that HCV is a disease of the liver passed through infected blood or blood products (often during illegal intravenous drug use) that may become a chronic condition causing scarring of the liver. More than one-fourth of those infected will recover without problems, although minor scarring (fibrosis) may occur, or more damaging scarring, known as cirrhosis, may result. Some patients with cirrhosis develop liver failure or other complications. *See Worsham v. Governor,* Civil Action No. JFM-03-628, Declaration of Sharon Baucom, M.D., ¶ 4, attached as ECF No. 19, Exhibit C in *Johnson v. Saar*, Civil Action No. PJM-07-343.

---

[2] While Hepatitis B can become a chronic condition, *see* National Digestive Diseases Information Clearinghouse, http://digestuve,niddk.nih.gov/ddiseases/pubs/hepb_ez/ , Hepatitis A is an acute illness that does not develop into a chronic form of liver infection and requires no treatment. *See* http://digestive.niddk.nih.gov/ddiseases/pubs/hepa_ez. Plaintiff, who has tested positive for both Hepatitis A and Hepatitis B, received vaccinations against both diseases on January 10 and February 11, 2007. ECF No. 13, Exhibit A, ¶ 4. This comports with the DOC's protocol. ECF No. 26, Exhibit A, Attachment at 3.

Under current DPSCS policy,[3] a patient can receive antiviral therapy if approved for treatment by the DPSCS Hepatitis C Clinical Review Panel ("Panel"), which includes Defendant Baucom, a state-contracted infectious disease specialist from the University of Maryland (Dr. Gebreye Rufael), and others. ECF No. 26, Exhibit A, ¶ 4. Dr. Baucom's role on the Panel is limited to authorization of payment to medical contractors for treatment and providing insight into the policy and procedures that govern the process. The infectious disease specialist, Dr. Rufael, determines whether to treat or defer treatment, which can include a liver biopsy. *Id.*, Exhibit A, ¶ 7.

Plaintiff, whose release date is September 11, 2016, tested positive for HCV in March of 2007.[4] Testing revealed he is infected with viral genotype 1A. ECF No. 26, Exhibit B at 11. Upon diagnosis Plaintiff received education and counseling and was enrolled in the Chronic Care Clinic ("CCC"). ECF No. 13, Exhibit B at 13. Over the course of three years, blood work revealed fluctuating ALT levels,[5] with some at or near normal and others more elevated. ECF No. 13, Exhibit A, ¶¶ 8-10, 12-14. On February 25, 2010, Dr. Hubert Mickel evaluated Plaintiff and noted an increase in ALT to 97 u/L. Repeat blood work revealed the ALT had decreased to 50 u/L. *Id.*, Exhibit A, ¶ 15.

In early April of 2010, Plaintiff requested evaluation to move forward with liver testing. He was referred to Dr. Rufael for evaluation for antiviral treatment. Blood work and a psychiatric evaluation were ordered, per the protocol. *Id.*, Exhibit A, ¶ 16. On August 9, 2010, Dr. Joubert noted that Plaintiff had filed an Administrative Remedy Procedure ("ARP") form

---

[3] The policy protocol was developed and approved by infectious disease specialists from the University of Maryland Institute of Human Virology and the Johns Hopkins University. ECF No. 26, Exhibit A, ¶ 4; see also Infection Control Manual, attached thereto.

[4] Medical records indicate the original diagnosis may have occurred as early as 1993. ECF No. 13, Exhibit B at 1.

[5] ALT, or alanine aminotransferase, is an enzyme which, when concentrated in the blood, may indicate the presence of viral hepatitis. *See Stedman's Medical Dictionary*, 27th Edition, pg. 40.

complaining that his liver biopsy was delayed.  Dr. Joubert noted that his blood tests showed "very minor elevations" and that an urgent biopsy was not required.  Dr. Joubert also noted that Plaintiff was undergoing evaluation to see if HCV treatment was appropriate, and advised Plaintiff accordingly.  *Id*., Exhibit A, ¶ 17.

On August 12, 2010, Plaintiff received Hepatitis A and B boosters.  A note indicates that his case had been presented to Dr. Rufael for consideration.  Later that day a nurse noted that treatment had been denied because Plaintiff had tested positive in May for opiate drug use.[6]  *Id*., Exhibit A, ¶18; Exhibit B at 57.  On September 14, 2010, Dr. Joubert reiterated to Plaintiff that "there is a very high likelihood of non-response [to HVC treatment] if he is actively using/abusing illicit drugs" and that he could be re-evaluated for treatment after six months if he abstained from drug abuse.  Dr. Joubert "reminded [Plaintiff] that had he not tested positive for opiates it [HCV treatment] would likely have been initiated."  ECF No. 13, Exhibit B at 67.

Plaintiff also complains that his back pain has not been addressed.  Plaintiff sustained a back injury prior to incarceration while riding a dirt bike.[7]  ECF No. 13, Exhibit B at 53.  He has received non-narcotic pain medication for chronic back pain as needed.  ECF No. 13, Exhibit A, ¶ 20-23,  On August 18, 2010, he sought "something stronger" for back pain and was advised against using a narcotic analgesic due to his history of substance abuse.  ECF No. 13, Exhibit B at 63.  He continues to receive Neurontin and Naprosyn for pain.  *Id*., Exhibit A, ¶ 25.

Plaintiff is concerned that his liver values have declined and believes a liver biopsy and advanced treatment under the protocol should have been initiated several years ago.  He opines that delay has caused him "irreparable damage" and that he should never have been provided

---

[6] Under the protocol patients must be drug- and alcohol-free for twelve months in order to receive HCV treatment. ECF No. 26, Exhibit A, Attachment at 4.

7 Plaintiff's opinion to the contrary, ECF No. 29 at Attachments, there is no medical determination that his pain is in fact due to HCV-induced neuropathy.

multivitamins with iron, based on blood values showing elevated iron levels. ECF No. 29 at 3-4. He also indicates that he completed drug rehabilitation several months ago but has not been reassessed for liver biopsy and further treatment as promised. ECF No. 34 at 2-3.

"Disagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Based on Defendants' representations, the Court finds that Plaintiff's health care needs have been met to date and his health status has been monitored. The Court further finds that Plaintiff's misconduct has led to delay in evaluation for HCV treatment. Given the lapse in time between the filing of dispositive motions and judicial review, counsel for the Medical Defendant shall provide the Court with a status report concerning Plaintiff's most recent back pain treatment and HCV testing, including ALT levels and avenues of treatment, including any reassessment as to whether Plaintiff is a candidate for further treatment under the HCV protocol as discussed in Dr. Joubert's Update of August 12, 2010 (ECF No. 26, Exhibit B at 12).

Nothing more than what has been provided to Plaintiff is constitutionally required. Accordingly, Defendants' dispositive motions shall be granted and this case closed by way of a separate Order.

September 14, 2011                          /s/
(Date)                                       PETER J. MESSITTE
                                               UNITED STATES DISTRICT JUDGE